**ORIGINAL**

**BANKRUPTCY C...
FILED**

**FEB 2 4**

1  MARC J. WINTHROP -State Bar No. 66118
   GARRICK A. HOLLANDER -State Bar No. 166319
2  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
3  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA  92660
4
   Telephone (949)720-4100
5  Facsimile (949)720-4111

   ENTERED

   FEB 2 4 2003

6  Proposed Insolvency Counsel for STM Wireless,
   Inc., Debtor and Debtor-in-Possession

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                       SANTA ANA DIVISION

11  In re                       | CASE NO.  SA-03-11289-JR
                                 |
12  STM WIRELESS, INC., a        | Chapter 11 Proceedings
    Delaware corporation,        |
13  Debtor and Debtor-in-        | INTERIM ORDER (1) APPROVING POST-
    Possession.                  | PETITION FINANCING AGREEMENT BY
14                               | AND BETWEEN THE DEBTOR AND SLOAN
                                 | CAPITAL; (2) AUTHORIZING DEBTOR TO
15                               | INCUR DEBT PURSUANT TO 11 U.S.C.
                                 | § 364(C) (3); (3) AUTHORIZING THE
16                               | DEBTOR TO GRANT SLOAN CAPITAL A
                                 | ~~FIRST PRIORITY~~ LIEN AGAINST ALL
17                               | ESTATE PROPERTY TO SECURE POST-
                                 | PETITION FINANCING; AND
18                               | (4) SCHEDULING A FINAL HEARING ON
                                 | THE MOTION REGARDING FINANCING
19                               |
                                 | [11 U.S.C. § 364(C); F.R.B.P.
20                               | 4001(c)]
                                 |
21                               | Date:  February 24, 2003
                                 | Time:  10:00 a.m.
22                               | Courtroom:  5A

23

24      Upon the <u>Emergency</u> Motion (the "Motion") of STM Wireless,

25  Inc., a Delaware corporation, the debtor and debtor-in-possession

26  in the above-entitled chapter 11 proceeding (the "Debtor" or

27  "STM") seeking entry of an order (this "Order"):

28      1.  Authorizing STM to borrow the sum of $400,000 (the

                                    -1-

SD\1547007.1    83424

"Loan") from Sloan Capital Partners, LLC ("Sloan") on the terms and conditions described in the commitment letter attached to the Declaration of Joseph Wallace ("Wallace Declaration") as Exhibit 1 and as fully set forth in the Secured Promissory Note, Intellectual Property Security Agreement, Deed of Trust with Assignment of Rents and UCC-1 Financing Statement (collectively, the "Loan Documents") submitted to the Court at the time of the hearing, all pursuant to 11 U.S.C. § 364(d)(1);

2.   Approving the Loan Documents between STM and Sloan;

3.   Authorizing STM to grant Sloan a first-priority lien against all estate property to secure repayment of the funds advanced under the terms of the Loan Documents;

4.   Setting the date for the hearing (the "Final Hearing") to consider the entry of a final order (the "Final Order") authorizing and approving, on a final basis, the transactions described in the foregoing clauses 1 through 3; and it appearing that the relief requested in the Motion is necessary to provide the Debtor with sufficient capital to continue operations and preserve the going concern value of its business; it further appearing that notice of the Motion is sufficient and complies with the requirements of Bankruptcy Rules 4001(b), 4001(c) and 4001(d); and for good cause shown;

**THE COURT HEREBY FINDS THAT**:

A.   On February 20, 2003, (the "Petition Date"), the Debtor commenced the instant chapter 11 case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

-2-

SD\1547007.1    83424

1 | Central District of California, Santa Ana Division (the "Court").

2 |     B.   The Debtor has continued in the management and
3 | operations of its business as debtor-in-possession pursuant to
4 | §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner
5 | has been appointed in the Debtor's bankruptcy case, and no
6 | official committee of unsecured creditors has been formed as of
7 | the date hereof.
8 |     C.   This Court has jurisdiction pursuant to 28 U.S.C.
9 | §§ 158(b) and 1334 over the Debtor's bankruptcy case, and over
10 | the persons and property affected hereby. Consideration of the
11 | Debtor's Motion constitutes a core proceeding as defined in 28
12 | U.S.C. § 157(b)(2). The statutory predicates for the relief
13 | sought by the Motion are sections 105, 361 and 364 of the
14 | Bankruptcy Code and Rule 4001(b)(1), 4001(c) and 4001(d) of the
15 | Federal Rules of Bankruptcy Procedure. Venue of the Debtor's
16 | bankruptcy case in this Court is proper pursuant to 28 U.S.C.
17 | §§ 1408 and 1409.
18 |     D.   An immediate need exists for the Debtor to obtain funds
19 | and financial accommodations with which to continue its
20 | operations, meet its payroll and other necessary, ordinary course
21 | of business expenses, acquire goods and services and administer
22 | and preserve the value of the Debtor's bankruptcy estate. The
23 | ability of the Debtor to finance its operations requires the
24 | availability of additional working capital, the absence of which
25 | would immediately and irreparably harm the Debtor, its estate,
26 | and its creditors.
27 |     E.   The Debtor is unable to obtain unsecured credit ~~and~~
28 | allow~~ed~~ only as an administrative expense pursuant to

-3-

SD\1547007.1    83424

1  section 503(b)(1) of the Bankruptcy Code.

2       F.    The Debtor is also unable to obtain secured credit
3  allowable under sections 364(c)(1), and 364(c)(2) ~~and 364(c)(3)~~ of
4  the Bankruptcy Code except under the terms and conditions
5  provided in the Loan Documents and this Order.  The Debtor is
6  unable to obtain credit for borrowed money without the Debtor
7  granting to Sloan liens on all assets of the Debtor pursuant to
8  sections ~~364(c)(2) and~~ 364(c)(3) of the Bankruptcy Code as
9  provided by this Order.

10      G.    The ability of the Debtor to finance its operations and
11 the availability of sufficient working capital through the
12 incurrence of indebtedness for borrowed money and other financial
13 accommodations is vital to the Debtor's ability to preserve and
14 maintain its going concern value.

15      H.    The relief requested in the Debtor's Motion is
16 necessary, essential and appropriate for the continued operation
17 of the Debtor's businesses and the preservation of its estate.

18      I.    It is in the best interests of the Debtor and its
19 estate to borrow the funds contemplated by the Loan Documents
20 between the Debtor and Sloan.

21      J.    The terms and conditions of the Loan Documents, as
22 described in the term sheet attached to the Wallace Declaration
23 as Exhibit 1 and the Loan Documents presented to the Court at the
24 time of the hearing on the Debtor's Motion, including those which
25 provide for the payment of interest to and fees of Sloan, are
26 fair, reasonable and the best available under the circumstances.

27      K.    The loan documents were negotiated in good faith and at
28 arms-length between the Debtor on the one hand and Sloan on the

-4-

SD\1547007.1        83424

other hand. Credit to be extended pursuant to the loan documents will be so extended in good faith, and consequence of which Sloan is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code, notwithstanding the claimed relationship between principals of Sloan and management of the Debtor.

L. As set forth in the Debtor's Motion, prior to the Debtor's bankruptcy filing, the Debtor's business operations have been financed by a line of credit by CIT Financial ("CIT"). The current balance owed under the terms of the line of credit with CIT is approximately $1,600,000 (the "CIT Obligation"). ~~Pursuant to section 364(d) of the Bankruptcy Code, the interests of CIT as the holder of an existing lien will be adequately protected by (a) maintenance and preservation of the Debtor's business and (b) a substantial equity cushion.~~

M. In addition to the CIT Obligation, the Debtor also has a contingent liability to for a bid bond in the approximate amount of $50,000 and to CIT for a performance bond (in the form of a bank guaranty) in the approximate amount of $846,000, both of which are issued in favor of Nepal Telecommunications Corporation (the "Bonds"). ~~Again, pursuant to Section 364(d) of the Bankruptcy Code, the interests of CIT as the holder of a contingent secured claim will be adequately protected by (a) maintenance and preservation of the Debtor's business and (b) a substantial~~ equity cushion.

N. Notice of the hearing (the "Interim Hearing") and the relief requested in the Debtor's Motion was given to (1) the United States Trustee for the Central District of California (the "U.S. Trustee"); (2) the CIT Group/Business Credit, Inc., secured creditor; (3) the twenty largest unsecured creditors; (4) ~~XiCom Technology~~ by Export Import Bank of the United States, guarantor of CIT obligation (collectively,

-5-

SD\1547007.1        83424

the "Initial Notice Parties"). Such notice constitutes good and sufficient notice of the Interim Hearing under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c) and 4001(d) and section 102(1) of the Bankruptcy Code, as required by sections 363(c), 363(e) and 364(c) of the Bankruptcy Code, in light of the emergency nature of the relief requested in the Debtor's Motion.

O. Good and sufficient cause has been shown for the entry of this Order. Among other things, the entry of this Order: (i) will enable the Debtor to continue the operation of its business and avoid immediate and irreparable harm to the Debtor's estate; (ii) will permit the Debtor to meet payroll ~~and other operating~~ expenses; (iii) will permit the Debtor ~~to obtain needed supplies and~~ to pay employees, and (iv) is in the best interest of the Debtor, its creditors and its estate. The financing arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate. Consummation of such financing is therefore in the best interest of the Debtor's estate.

NOW, THEREFORE, based upon the Debtor's Motion and the record before the Court with respect to the Debtor's Motion at the Interim Hearing, and good cause appearing,

**IT IS HEREBY ORDERED THAT:**

**APPROVAL OF AN AUTHORIZATION AS TO BORROWING AND GRANTING A FIRST PRIORITY SENIOR LIEN**

1. The Debtor is authorized to (a) borrow up to the sum of $200,000 from Sloan Capital Partners, LLC; (b) execute and deliver to Sloan each of the Loan Documents, ~~full and complete~~

-6-

1  ~~copies of which are attached hereto as Exhibit A, to which the~~
2  ~~Debtor is a party~~; and (c) make any nonrefundable payments to
3  Sloan of the fees provided for in the Loan Documents.
4      2.   The Debtor is hereby authorized and empowered to
5  do and perform all acts and to make, execute and deliver all
6  instruments and documents which may be required or necessary for
7  the performance by the Debtor under the Loan Documents and the
8  creation and perfection of the Liens described in and provided
9  for by the Loan Documents. Except as expressly provided for in
10 this paragraph 2, no further approval of the Court shall be
11 required for amendments to the Loan Documents that do not shorten
12 the maturity of the extension of credit thereunder or increase
13 the commitments or the rate of interest payable thereunder. The
14 Debtor shall provide five (5) business days' prior written notice
15 of any amendment entered into pursuant to this paragraph 2 to
16 each secured creditor and statutory committee that may be
17 appointed in the Debtor's bankruptcy case.
18     3.   The Debtor is hereby authorized to grant to Sloan
19 and Sloan is hereby granted pursuant to sections ~~364(c)(2) and~~
20 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable
21 and perfected security interest in and Liens upon all collateral
22 (the "Collateral") to be provided pursuant to the Loan Documents
23 to secure all of the Obligations under the Loan Documents,
24 including, without limitation:
25     (a)  all accounts (including health-care-insurance
26 receivables), chattel paper (including tangible and electronic
27 chattel paper), deposit accounts, documents (including negotiable
28 documents), equipment (including all accessions and additions

-7-

1 thereto), general intangibles (including but not limited to,
2 payment intangibles, software, trade secrets, goodwill, customer
3 lists, catalogs and other printed materials, publications,
4 indexes, lists, data and other documents and papers relating
5 thereto, blueprints, designs, charts, and research and
6 development, whether on paper, recorded electronically or
7 otherwise), goods (including fixtures), instruments (including
8 promissory notes), inventory (including all goods held for sale
9 or lease or to be furnished under a contract of service, and
10 including returns and repossessions), investment property
11 (including securities and securities entitlements), cash, cash
12 equivalents, letter of credit rights, money, and all of Debtor's
13 books and records with respect to any of the foregoing, and any
14 computers and equipment containing said books and records;
15      (b) all common law and statutory copyrights and copyright
16 registrations, applications for registration, now existing or
17 hereafter arising, in the United States of America or in any
18 foreign jurisdiction, obtained or to be obtained on or in
19 connection with any of the forgoing, or any parts thereof or any
20 underlying or component elements of any of the forgoing, together
21 with the right to copyright and all rights to renew or extend
22 such copyrights and the right (but not the obligation) of Secured
23 Party to sue in its own name and/or in the name of the Debtor for
24 past, present and future infringements of copyright and all
25 exclusive and non-exclusive licenses to the Debtor from third
26 parties or rights to use copyrights owned by such third parties,
27 including, without limitation the registrations, applications and
28 licenses listed on Exhibit B to the Note (the "Copyrights"),

-8-

1  except to the extent such licenses or applicable law prohibits
2  any transfer or assignment thereof;
3      (c)  all trademarks, service marks, trade names and service
4  names and the goodwill associated therewith, together with the
5  right to trademark and all rights to renew or extend such
6  trademarks and the right (but not the obligation) of Secured
7  Party to sue in its own name and/or in the name of the Debtor for
8  past, present and future infringements of trademark and all
9  exclusive and non-exclusive licenses to the Debtor from third
10 parties of the right to use trademarks of such third parties,
11 including without limitation, the registrations, applicable
12 unregistered trademarks, service marks and licenses listed on
13 Exhibit B to the Note (the "Trademarks"), except to the extent
14 such licenses or applicable law prohibits any transfer or
15 assignment thereof;
16     (d)  all (i) patents and patent applications filed in the
17 United States Patent and Trademark Office or any similar office
18 of any foreign jurisdiction, and interests under patent license
19 agreements, including, without limitation, the inventions and
20 improvements described and claimed therein, (ii) licenses
21 pertaining to any patent whether Debtor is licensor or licensee,
22 (iii) income, royalties, damages, payments, accounts and accounts
23 receivable now or hereafter due and/or payable under and with
24 respect thereto, including, without limitation, damages and
25 payments for past, present or future infringements thereof, (iv)
26 right (but not the obligation) to sue in the name of Debtor
27 and/or in the name of Secured Party for past, present and future
28 infringements thereof, (v) rights corresponding thereto

-9-

1  throughout the world in all jurisdictions in which such patents
2  have been issued or applied for, and (vi) reissues, divisions,
3  continuations, renewals, extensions and continuations-in-part
4  with respect to any of the foregoing and all patents, patent
5  applications and licenses on Exhibit B to the Note (the
6  "Patents");
7      (e)  the entire goodwill of the Debtor's business and other
8  general intangibles (including but not limited to, know how,
9  trade secrets, customer lists, proprietary information,
10 inventions, domain names, methods, procedures, formulas and
11 databases) connected with the use of and symbolized by any
12 Patents, Trademark, or Copyrights of the Debtor;
13     (f)  any and all cash proceeds and/or noncash proceeds of
14 any of the foregoing, including, without limitation, insurance
15 proceeds, and all supporting obligations and the security
16 therefor or for any right to payment.  All terms above have the
17 meanings given to them in the California Uniform Commercial Code,
18 as amended or supplemented from time to time; ~~and~~ ./
19     (g)  those certain lawsuits wherein Debtor is a party
20 including, but not limited to, the following:
21         (i)  Astronic vs. STM Wireless vs. Excello, bearing
22 case number 02CC05286 and pending in the Superior Court of
23 California;
24         (ii) STM Wireless vs. SkyOnline, Inc., bearing case
25 number 13810005903 and pending in the AAA Northeast Case
26 Management Center; and
27         (iii)    STM Wireless vs. Gilat, bearing case number
28 01CC13531 and pending in the Orange County Superior Court; ./
   (h)  *all of the debtors real [property?] property*

SD\1547007.1    83424

4. Notwithstanding the foregoing, the Collateral shall not include the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, or any avoidance action under the Bankruptcy Code (collectively, the "Avoidance Actions") and any proceeds of the Avoidance Actions. Sloan reserves its right to assert at the Final Hearing that the Final Order should provide that the Collateral shall include the proceeds of the Avoidance Actions.

5. The Liens created and granted to Sloan, as provided in paragraph 3 above, are (a) ~~first priority~~ Liens created pursuant to section 364(c)(3) [handwritten, replacing "(2)"] of the Bankruptcy Code on all property of the Debtor's estate that on the Petition Date was not subject to valid and perfected liens on the Petition Date ~~and (b) Liens created pursuant to sections 364(c)(3) of the Bankruptcy Code on all property of the Debtor's estate that on the Petition Date was subject to a valid and perfected lien~~ or ~~become subject to a valid lien perfected (but not granted)~~ after ~~the Petition Date to the extent such post-Petition Date perfection in respect of pre-petition claims~~ is expressly ~~permitted under the Bankruptcy Code (the "Permitted Prior Liens")~~. In addition the Liens granted to Sloan are senior to any liens arising after the Petition Date (including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor).

6. The automatic stay imposed under section 362(a)(4) of the Bankruptcy Code is hereby lifted only to permit the Debtor to grant the Liens and to perform the Debtor's liabilities and

-11-

SD\1547007.1    83424

obligations to Sloan under the Loan Documents.

7. All payments applied to the Obligations under the Loan Documents shall be applied thereto in the manner set forth in the Loan Documents.

8. Immediately (a) this Order shall be sufficient and conclusive evidence that the validity, perfection, and priority of (i) the Sloan's Liens upon the Collateral to secure all Obligations without necessity of filing or recording any financing statement, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Liens of Sloan upon the Collateral or to entitle Sloan to the priority granted herein (including, in respect of cash, any requirement that Sloan have possession of or dominion and control over, any such cash in order to perfect an interest therein); provided that the Debtor may execute and Sloan may file or record financing statements, mortgages or other instruments to evidence and to perfect the Liens authorized hereby; and provided further that no such filing or recordation shall be necessary or required in order to create or perfect any such Liens; and (b) the Debtor (i) hereby is authorized and directed to pay all reasonable costs, fees and out of pocket expenses of Sloan, including reasonable costs, fees and expenses incurred in connection with the negotiation, documentation and administration of the Loan Documents in the matters set forth in this Order and all other matters arising in or in connection with the Debtor's bankruptcy case, and all reasonable attorneys' fees and expenses incurred by Sloan in connection therewith, and (ii) shall promptly reimburse

1  Sloan for such other reasonable costs and expenses provided for
2  in section 13 and 14 of the Secured Promissory Note.  Such fees
3  and expenses may be deducted by Sloan out of the proceeds of the
4  amounts to be advanced to the Debtor as provided under the Loan
5  Documents.  Sloan shall provide copies of any invoices in respect
6  of any such costs and expenses to the Debtor and each statutory
7  committee appointed in the Debtor's bankruptcy case, but none of
8  such costs and expenses shall be subject to the approval of the
9  Court, and no recipient of any such payment shall be required to
10 file with respect thereto any interim or final fee application
11 with this Court.

12         9.   Each officer of the Debtor as may be so authorized
13 by the Board of Directors, acting singly, is hereby authorized to
14 execute and deliver each of the Loan Documents, such execution
15 and delivery to be conclusive of their respective authority to
16 act in the name of and on behalf of the Debtor.

17         10.  Sloan may file a ~~xerographic~~ copy of this Order as
18 a mortgage, financing statement or similar perfection document
19 with any recording officer designated to file financing
20 statements or with any registry of deeds or similar office in any
21 jurisdiction in which the Debtor has real or personal property.

22         11.  The Loan Documents and each of the loan documents
23 respectively, shall constitute an evidence the valid and binding
24 Obligations of the Debtor, which Obligations shall be enforceable
25 against the Debtor in accordance with the term and the terms of
26 this Order.

27         12.  Interest on the Obligations under the Loan
28 Documents shall accrue at the rates (including applicable default

-13-

SD\1547007.1        83424

rates) and shall be paid at the times as provided in the Loan Documents. All Obligations under the Loan Documents shall become due and payable, without notice or demand, on the Maturity Date (as defined in the Secured Promissory Note).

13. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in the Debtor's bankruptcy case, and no priority claims to the Collateral are, or will be, prior to or on a parity with the Obligations under the Loan Documents.

14. [*Except to the extent of $25,000*] The Debtor agrees that no cost or expense which is incurred by the Debtor in connection with or on account of the preservation or disposition of any Collateral or which otherwise would be chargeable to Sloan or the Collateral pursuant to section 506(c) of the Bankruptcy code or otherwise, shall be chargeable to Sloan or the Collateral.

15. All Obligations of the Debtor to Sloan under the loan documents are due and payable, without notice and demand, upon the Maturity Date (as defined in the Secured Promissory Note). Unless and until the Obligations under the Loan Documents are unconditionally and indefeasibly repaid in full in cash (a) the protections afforded to Sloan under the Loan Documents and hereunder, and any actions taken pursuant thereto and hereto, shall survive the entry of any order confirming a plan of reorganization, converting the Debtor's bankruptcy case into a case pursuant to chapter 7 of the Bankruptcy Code or dismissing the Debtor's bankruptcy case, (b) the Liens of Sloan upon the Collateral shall continue in this case and in any such successor

-14-

case, and (c) such Liens of Sloan shall maintain their priority as provided by this Order until the Obligations (other than contingent indemnification obligations) under the Loan Documents have been repaid indefeasibly in full in cash.

16. The time and manner of payment of the Obligations pursuant to the Loan Documents, the Liens upon the Collateral shall not be altered or impaired by any plan of reorganization which hereafter may be confirmed or by any further order which hereafter may be entered without the consent of Sloan.

### REMEDIES UPON AN EVENT OF DEFAULT

17. Upon the occurrence of an Event of Default, as is defined in the loan documents, and at any time thereafter during the continuance thereof, Sloan shall be entitled to exercise its rights and remedies as set forth in more detail in Exhibit "A."

18. Nothing included herein shall prejudice, impair, or otherwise affect the rights of Sloan to seek any other or supplemental relief in respect of the Debtor consistent with and subject to the provisions of this Order, including Sloan's rights, as provided in the Loan Documents, after the occurrence of during the continuance of an Event of Default, to seek to limit the Debtor's use of cash collateral, or to suspend or terminate the making of advances under the Loan Documents.

### ~~NOTICE OF FINAL HEARING~~

19. ~~Following entry of this Order, the Debtor shall,~~ on or before February ___, 2003, provide ~~notice~~ of the Motion, this Order and the ~~Final Hearing~~ by telecopy, overnight delivery service, ~~hand~~ delivery or U.S. mail to each of the Initial Notice ~~Parties and, without duplication, to (i) the Debtor's twenty~~

-15-

SD\1547007.1    83424

1  ~~largest unsecured creditors, (ii) if practicable, the applicable~~
2  state and local taxing authorities, (iii) parties who have filed
3  a request for special notice prior to such date, and (iv) other
4  secured parties as shown on any UCC searches conducted by the
5  Debtor.  Such notice shall constitute good and sufficient notice
6  of the Final Hearing.  The notice of the Final Hearing shall
7  state that any party in interest objecting to the Loan Documents
8  or the terms of the Final Order shall file written objections
9  with the United States Bankruptcy Court Clerk for the Central
10 District of California, Santa Ana Division, no later than
11 _____, 2003, which objections shall be served
12 so that same are received by no later than 4:00 p.m. (prevailing
13 Pacific Standard Time) on such date by:  (a) Marc Winthrop,
14 Winthrop Couchot, 660 Newport Center Drive, Fourth Floor, Newport
15 Beach, California 92660, (b) Jeffry A. Davis, Gray Cary Ware &
16 Freidenrich LLP, 4365 Executive Drive, Suite 1100, San Diego, CA
17 92121-2133, (c) the Office of the United States Trustee and
18 (d) attorneys for any statutory committee appointed in the
19 Debtor's bankruptcy case.
20         20.  The Final Hearing to consider the Motion and Final
21 Order shall be held on _____, 2003 at ___:___ .m. at
22 United States Bankruptcy Court, 411 West Fourth Street, Santa Ana
23 CA 92701-4593, Courtroom 5A, before the Honorable John E. Ryan,
24 ~~United States Bankruptcy Judge.~~

-16-

SD\1547007.1        83424

EXHIBIT "B"

Upon the occurrence of an Event of Default, as defined in the loan documents, Sloan shall notify the Debtor, the Debtor's counsel, *its counsel* and the Office of the United States Trustee (collectively, the "Noticed Parties") of such Event of Default in writing via facsimile, personal delivery, and/or overnight mail during normal business hours ("Notice"). ~~If the~~ *Upon the occurrence of an* Event of Default ~~is not cured within ____ (__) business days from the date from which said Notice is received by facsimile and/or personal delivery ("Cure Period"), then on the ____th (__th) business day following the Notice,~~ Sloan may file a motion seeking relief from the automatic stay to enforce its remedies. *and shall be entitled to a hearing on three (3) business days notice to the Noticed Parties.*

